Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 2914 | **DATE** | 8/31/2012 |
| **CASE TITLE** | Carter vs. Elyea et al. | | |

**DOCKET ENTRY TEXT**

Before the Court is Defendants Health Professionals LTD and Correctional Healthcare Companies' motion to dismiss [25] Plaintiff's second amended complaint. For the following reasons, Defendants' motion [25] is granted. However, Plaintiff is given leave to replead as to Count III within 21 days if she believes that she can cure the deficiencies in the existing complaint identified below. A further status hearing is set for 9/25/2012 at 9:00 a.m. Counsel are directed to meet and confer and to file by 9/21/2012 an updated joint status report that (1) includes a proposed discovery plan as to Counts I and II (which remain pending against Defendant Elyea) and (2) indicates whether the parties have any interest in a settlement conference at this time.

■[ For further details see text below.]  Docketing to mail notices.

# STATEMENT

Plaintiff Loletha Carter, as Mother and Next Friend of D.T., a minor, brought the currently operative second amended complaint against Defendants' Willard Elyea, Health Professionals, LTD, Correctional Healthcare Companies Inc., and Unknown Jane Does and John Does, alleging that (1) pursuant to 42 U.S.C. § 1983 Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, (2) Defendants were negligent, and (3) the corporate Defendants are subject to liability under *Monell v. Department of Social Services*, 436 U.S. 648 (1978). Defendants Health Professionals, Ltd. and Correctional Healthcare Companies ("Moving Defendants") have moved to dismiss Plaintiff's second amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [25].

I.     Background[1]

> [FN1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations that are set forth in Plaintiff's complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

At the time of the incident that gave rise to this lawsuit, the minor on whose behalf the lawsuit was filed was an inmate at the Illinois Youth Center in St. Charles, Illinois. On the evening of August 3, 2010, while D.T. was in his cell, he experienced the sudden onset of excruciating pain in his left testicle. D.T. was taken to the medical unit where he was put under the care of Defendants' employees, including Dr. Elyea. D.T. continued

| **STATEMENT** |
|---|

to be in significant pain when he saw Defendants' staff and told them his pain was a 10 on the scale of 1-10. A nurse examined D.T. and found that his left testicle was swollen. The nurse then called Dr. Elyea and informed him of D.T.'s condition. Elyea admitted D.T. into the medical unit, and gave the staff the orders to increase fluids, increase ambulation, conduct a urine strain, administer 800 mg of Motrin every four hours, and follow up with a physician the next day. At no time did Elyea personally examine D.T., nor did he tell the nurses to transport him to the emergency room for evaluation.

D.T. continued to experience pain throughout the night, and was examined again at approximately 9:30 a.m. on August 4, 2010 by another staff member. At that time, the employee recorded that D.T. still was complaining about his left testicle and that it was approximately 3 times larger and was slightly higher than his right testicle. Dr. Elyea was informed of these findings, but did not personally examine D.T. or direct anyone to send him to the emergency room.

D.T. was seen by a physician for the first time just over an hour later, at approximately 10:45 am on August 4. The physician, who is not specifically identified, noted that D.T. was experiencing left testicular pain and that his left testicle was edematous, firm and palpably tender. He also noted that D.T. had no relief from the pain with elevation. The doctor ordered that D.T. be transferred to the emergency room for an ultrasound evaluation and changed his Motrin dose to 600 mg every 6 hours as needed.

Plaintiff was transported to the emergency department at Delnor Community Hospital at approximately 12:00 p.m. on August 4, 2010. When he arrived he was examined and found to have tenderness and swelling in his left testicle. He was then given an ultrasound examination which revealed, among other things, testicular torsion of the left testicle. The doctor then asked for a urology consult. Dr. Lenting, the urologist, preformed a surgical scrotal exploration which revealed the Plaintiff's left testicle was "dark blue to black in color" and there was "hemorrhagic necrosis." Plaintiff's left testicle had to be surgically removed.

**II.     Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

| STATEMENT |
|---|

### III. Analysis

#### A. Count I: Denial of Medical Treatment

As Moving Defendants correctly note, private corporations (like the Moving Defendants here) cannot be held vicariously liable under § 1983 for alleged deprivations of the rights of others by the corporation's employees. See *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Because Moving Defendants fit the paradigm for avoiding § 1983 liability under a vicarious liability theory, they can be held liable only an unconstitutional policy or practice of the corporation constitutes the "direct cause" or "moving force" behind Plaintiff's injuries. *Estate of Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Plaintiff asserts such a "*Monell*" claim against Moving Defendants in Count III. To the extent that Count I seeks relief against Moving Defendants under *Monell*, it is duplicative of Count III. To the extent that Count I attempts to state a non-*Monell* claim against Moving Defendants, no such claim is permissible because it would impose liability under a *respondeat superior* theory. Accordingly, Moving Defendants' motion to dismiss Count I as to them only is granted; Count I remains viable against Defendant Elyea, as does Count II.

#### B. Count III: Monell Claim

According to the complaint, Moving Defendants are private corporations engaged in the business of providing medical care to inmates in the custody of the Illinois Department of Corrections. The Seventh Circuit has held that private corporations acting under color of state law are treated as municipalities for purposes of claims under § 1983. *Jackson v. Illinois Medi-Car*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). Moving Defendants fit that description because they perform a governmental function pursuant to delegated authority from the IDOC. See *Taylor v. Wexford Health Services, Inc.*, 2012 WL 245165, at *4 (N.D. Ill. Jan. 26, 2012) (citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996)). To establish a *Monell* claim against Moving Defendants, Plaintiff must allege that his injuries were caused by a custom, policy, or practice for which Moving Defendants were responsible. *Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009). "To establish an official policy or custom, Plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of [Moving Defendants], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Village of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2009).

In seeking dismissal of Count III, Moving Defendants argue that Plaintiff has pled himself out of court by affirmatively alleging facts establishing that he has no valid claim, citing *U.S. Gypsum v. Indiana Gas*, 350 F.3d 623, 626 (7th Cir. 2004). Specifically, Moving Defendants point out that the complaint alleges that Plaintiff did receive treatment, transportation to the hospital, and eventual surgery – all of which, Moving Defendants contend, contradict Plaintiff's allegations of deficiencies in Moving Defendants practice and policies. As explained below, while Moving Defendants are correct in observing that a plaintiff can plead himself out of court, the Court disagrees that Plaintiff in fact has done so here.

To be sure, in view of a high bar for plaintiffs alleging violations of the Eighth Amendment on the basis of inadequate health care, plaintiffs can and often do plead themselves out of court by alleging either a minor injury or acknowledging that the treatment provided was at least adequate, even if not stupendous. A prison

| STATEMENT |
|---|

official violates the Eighth Amendment's proscription against cruel and unusual punishment only if the official acts with "deliberate indifference to the serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish such a violation, the plaintiff must first demonstrate that the condition was objectively serious. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). An objectively serious medical condition is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id*. In other words, first prong requires that a prisoner's medical needs be sufficiently serious such that a "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). In this case, the parties do not dispute that testicle torsion is a serious medical condition. The Court agrees—testicle torsion and the resulting loss of Plaintiff's left testicle is an objectively serious condition.

The second prong requires that Plaintiff to demonstrate that the prison official acted or failed to act with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. A prison official cannot be found liable under the Eighth Amendment for denying medical care unless the prison official "knows of and disregards the excessive risk to the inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious hard exists, and he must also draw the inference." *Id*. at 837. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. A plaintiff therefore must "plead sufficient facts to demonstrate that a fact-finder could infer deliberate indifference from the doctors' treatment decisions." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). Deliberate indifference requires intentional or criminally reckless conduct; negligence or even gross negligence will not suffice. See *Farmer*, 511 U.S. at 835-40. In order to determine whether a doctor has acted with deliberate indifference, the court must consider to totality of the inmate's medical care. See *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

Here, Plaintiff's second amended complaint alleges that after the sudden onset of extreme pain on the night of August 3, Plaintiff was taken to the medical wing. Plaintiff was then examined by a nurse on staff who noted that his left testicle was swollen. The nurse contacted Dr. Elyea and informed him of Plaintiff's symptoms. The doctor ordered that Plaintiff be admitted into the medical unit and that he be given fluids, increased ambulation, a urine strain, and 800 mg of Motrin every 4 hours. Plaintiff continued to experience severe pain throughout the night, and at approximately 9:30 in the morning of August 4, Plaintiff was again seen by one of the nurses on staff. At that time it was noted that the left testicle was slightly higher and three times larger than the right testicle. Staff paged Dr. Elyea and informed him of the most recent findings. At approximately 10:45 a.m. on August 4, Plaintiff was seen by a physician who noted that Plaintiff was experiencing left testicular pain and that his testicle was edematous, firm, and palpably tender. The doctor ordered that Plaintiff be transferred to the emergency room for an ultrasound evaluation and he changed his Motrin dosage to 600 mg every 6 hours. At noon – 75 minutes after the order was made – Plaintiff was transported to the emergency room at Delnor Community Hospital. Unfortunately, after Plaintiff reached the hospital, a urologist examined Plaintiff and determined that his testicle had to be removed.

On this set of facts, which must be accepted as true for purposes of the present motion, the Court cannot agree with Moving Defendants that Plaintiff has pled himself out of court. It may be that after the allegations are

subjected to the crucible of discovery and further motion practice, they will amount to nothing more than negligence, at most. At the same time, however, the Court is in no position at this stage of the case to exclude with certainty the possibility that an inference of deliberate indifference can be drawn from these facts. "While the Eighth Amendment does not protect against medical malpractice and differences of opinion among medical personnel regarding a patient's appropriate treatment do not rise to the level of deliberate indifference, 'deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision . . . when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Spencer v. Sheahan*, 1999 WL 438998, at *5 (N.D. Ill. June 21, 1999) (quoting *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). The Court cannot conclude on a motion to dismiss that the alleged delay in making arrangements for a physician to examine D.T. and transporting him to the hospital cannot give rise to liability. See *id*. at *6 (denying motion to dismiss); see also *Taylor*, 2012 WL 245165, at *5 ("the question is why it took so long for Plaintiff to receive his medication, and this question cannot be answered at the initial review / motion to dismiss stage of the proceedings").[2]

> [FN2] With that said, the complaint acknowledges that Plaintiff did receive some prompt medical attention and was transferred to the hospital the following morning. These facts suggest that Plaintiff may have difficulty at a later stage of the case and may need expert testimony to advance his case. But Moving Defendants' contention that the Court may resolve the merits against Plaintiff on the basis of his pleading alone cannot be sustained.

Having concluded that Plaintiff has not pled himself *out* of court in his second amended complaint, the Court also concludes that he has not (yet) pled himself *in* to court, either, at least as to Count III. While the foregoing analysis easily demonstrates that Plaintiff states claims for denial of medical attention under § 1983 and negligence under state law, pleading a *Monell* claim is a different matter. The complaint alleges three policies and practices of Moving Defendants which, in Plaintiff's view, give rise to liability under *Monell*: (1) failure to adequately train and/or supervise their medical personnel; (2) failure to provide adequate staffing of medical personnel to provide for the timely treatment of medical needs of detainees; and (3) creation, tolerance, or failure to object to the financial disincentives to transfer detainees to off-site medical facilities when necessary for appropriate and necessary medical care and treatment. But the complaint says very little in support of these purported policies and practices. Instead, the complaint focuses almost exclusively on the events from the first report of D.T's pain on August 3, 2010, to his surgery the following day.

Perhaps Plaintiff has more to allege in support of his *Monell* claim. If so, he must say more. Although detailed factual allegations are not required, a complaint still must contain "enough facts to state a claim to relief that is plausible on its face" (*Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009)) and to give "fair notice" of the grounds on which the claim rests (*Concentra Health Servs.*, 496 F.3d at 776). One recent example of factual allegations sufficient to state a *Monell* claim in analogous circumstances is described in *Rendon v. Wexford Health Sources, Inc.*, 2011 WL 2669211, at *11 (C.D. Ill. July 7, 2011) (concluding that the plaintiff "supported her allegation with enough facts to allow a plausible inference" to defeat motion to dismiss *Monell* claim asserting a "custom and practice of failing to process medical requests, failure to train employees to treat inmates, and failure to properly staff jails and prisons

| STATEMENT |
|---|

throughout the United States and at the Dwight Correctional facility"). In citing *Rendon*, the Court does not mean to suggest any specific formula for pleading a *Monell* claim against a private corporation providing medical care at a correctional facility. All that the Court concludes at the present time is that Plaintiff's current operative pleading falls short of the requisite level of factual support for Count III to enable that count to move forward at this time. The Court will allow Plaintiff an opportunity to replead if Plaintiff believes that she can cure the deficiency noted above.

## IV.     Conclusion

For the foregoing reasons, Moving Defendants' motion to dismiss Counts I and III [25] is granted, but the dismissal is without prejudice to Plaintiff repleading as to Count III within 21 days. The case will continue forward as to Defendant Elyea on Counts I and II and as to the Moving Defendants if Plaintiff can successfully replead on Count III. A further status hearing is set for 9/25/2012 at 9:00 a.m. Counsel are directed to meet and confer and to file by 9/21/2012 an updated joint status report that (1) includes a proposed discovery plan as to Counts I and II and (2) indicates whether the parties have any interest in a settlement conference at this time. Should Plaintiff submit an amended complaint that alleges a viable *Monell* claim, the Court will set a discovery schedule as to that claim at a later date.

*[signature]*